IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

|  |  |
|---|---|
| MINDY S., | |
| Plaintiff, | **7:21-CV-5008** |
| vs. | |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security; | **MEMORANDUM AND ORDER AFFIRMING COMMISIONER'S DETERMINATION** |
| Defendant. | |

Plaintiff Mindy S.[1] seeks judicial review of Defendant Commissioner of the Social Security Administration's denial of her application for disability insurance benefits. Filing 1. Mindy S. has moved for an order reversing the Commissioner's decision. Filing 18. In response, the Commissioner filed a motion to affirm the Commissioner's final decision denying disability benefits. Filing 19. For the following reasons, the Court grants the Commissioner's motion and denies Mindy S.'s motion.

## I. BACKGROUND

Mindy S. was forty-four years old when she filed for disability insurance benefits with the Social Security Administration and forty-five at the time of her hearing. Filing 11-2 at 11, 26. She has at least a high school education, Filing 11-2 at 20, and has worked as a pharmacy technician, cashier checker, and front desk receptionist within the last fifteen years. Filing 11-2 at 19-20.

---

[1] The Court will refer to Plaintiff by first name and last name initial to protect her privacy.

## A. Procedural History

On November 11, 2019, Mindy S. filed a claim for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C §§ 401 *et seq*., alleging a disability-onset date of August 21, 2019. Filing 11-9 at 2-3. Mindy S.'s initial disability report alleges the following conditions limit her ability to work: scoliosis, depression, asthma, fibromyalgia, arthritis, and osteoporosis. Filing 11-10 at 6. The Social Security Administration initially denied her claim on May 8, 2020, Filing 11-4 at 2-5, and denied it upon reconsideration on August 21, 2020. Filing 11-4 at 10-11. Mindy S. then requested an administrative law judge (ALJ) review that denial. Filing 11-4 at 19-20. On January 12, 2021, the ALJ held an administrative hearing, Filing 11-2 at 26-51, and denied her claim on February 8, 2021. Filing 11-2 at 8-21. Mindy S. appealed the ALJ's decision to the Social Security Appeals Council, which found no reason to change the ALJ's decision and sent a notice of its denial of Mindy S.'s request for review on August 17, 2021. Filing 11-2 at 2-4. Mindy S. timely filed this present action requesting this Court review the denial of her claim for disability insurance benefits. Filing 1; *see* 42 U.S.C. § 405(g).

## B. ALJ Hearing

A hearing before an ALJ was held on January 12, 2021. Filing 11-2 at 26. At the hearing, Mindy S. testified that she is suffering from issues with her spine, including scoliosis, arthritis, and osteoporosis. Filing 11-2 at 31-32. In May 2020, she underwent surgery on her back to address these issues. Filing 11-2 at 31-32. She reported improvements with her back after the surgery until she fell down around August 2020. Filing 11-2 at 33-34. Mindy S. testified that she had a doctor's appointment with Dr. Anant Kumar, M.D., soon after her fall but did not inform him of the fall during the appointment. Filing 11-2 at 34. Since falling, Mindy S. alleges she has significant issues with her back that inhibit her ability to stand, walk, or sit for prolonged periods of time. Filing 11-

2

2 at 31-33. She testified that she can only lift five to ten pounds and cannot do household chores. Filing 11-2 at 36, 39. She can dress herself but cannot tie her shoes, as it requires her to bend over too far. Filing 11-2 at 39. She can drive herself but gets uncomfortable driving long distances. Filing 11-2 at 37. She sits in a recliner most of the day due to limited mobility. Filing 11-2 at 36. While sitting, Mindy S. alleges a need to shift her position every two to five minutes due to back pain. Filing 11-2 at 39. Finally, Mindy S. testified that she is suffering from depression, anxiety, is argumentative, and has trouble concentrating. Filing 11-2 at 31, 40-42.

Jeffrey Magrowski, a vocational expert (VE), testified as to the availability of jobs suitable for Mindy S. Filing 11-2 at 41-49. The VE testified that Mindy S.'s past relevant work included light, semi-skilled work as a "cashier checker" (DOT 211.462-014);[2] medium, semi-skilled work as a "pharmacy technician" (DOT 074.382-010); and sedentary, semi-skilled work as a "front desk receptionist" (DOT 237.367-038). Filing 11-2 at 44, 47. The VE noted a hypothetical individual with Mindy S.'s age and experience, who is capable of performing a full range of light work with occasional interaction with the general public, could not perform any of the jobs from Mindy S.'s past relevant work. Filing 11-2 at 47. The VE added that there are jobs available in the national economy for this same hypothetical individual, such as a "bakery helper" (DOT 524.687-022); an "office helper" (DOT 239.567-010); and a "mail clerk" (DOT 209.687-026).

Next, the VE opined that work existed in the national economy for the same hypothetical individual who is limited to sedentary lifting capacity with an ability to stand or walk six hours in an eight-hour workday; has no concentrated exposure to fumes, gases, chemicals, vibration, hazards such as unprotected heights, or close proximity to dangerous moving mechanical parts;

---

[2] The Social Security Administration primarily relies on the Dictionary of Occupational Titles (DOT) for gathering information about occupations in the national economy. Every occupational title in the DOT has a corresponding nine-digit identification number. *How to Find an Occupational Title and Code*, Information Technology Associates (Apr. 11, 2020), https://occupationalinfo.org/front_580.html.

3

and is limited to occasional interaction with the general public. Filing 11-2 at 48. Examples of available jobs for this hypothetical individual the VE provided include an "assembler" (DOT 713.687-018); a "scanner document preparer" (DOT 249.587-018); and a "packer of medical supplies" (DOT 559.687-014). For these occupations, the VE stated the number of jobs available is 35,000, 15,000, and 5,000 respectively. Filing 11-2 at 48-49.

The VE also noted there would be no competitive light work available for an individual requiring a special accommodation because of the need to alternate between sitting and standing every five to ten minutes. Filing 11-2 at 49. Finally, the VE testified that employers generally tolerate a few unexcused absences and one excused absence per month, but after three months the employee would need to either stop missing work or have a special accommodation to remain employed. Filing 11-2 at 49-50.

### C. Medical Records and Evidence

On May 5, 2019, Mindy S. fell on her left knee and suffered a subchondral fracture of the left fibular head. Filing 11-2 at 14. On June 20, 2019, Mindy S. had a follow-up where she reported improvement. Filing 11-12 at 10.

In August 2019, Dr. Irinel Stanciu, M.D., diagnosed Mindy S. with age-related osteoporosis with current pathological fracture. Filing 11-13 at 18. On August 27, 2019, Mindy S. visited Dr. Kumar complaining of severe back pain that had gradually worsened over the course of five years. Filing 11-12 at 2. Mindy S. rated the pain at eight out of ten in the lower back and five out of ten in the right buttock, and said the pain radiated to her right upper thigh. Filing 11-12 at 2. She also complained of thoracic pain, which worsened with twisting movements of the torso. Filing 11-12 at 3. When comparing x-rays taken that day to x-rays from 2016, Dr. Kumar reported worsening scoliosis and a loss in bone density. Filing 11-12 at 3. Dr. Kumar noted surgical

4

treatment was needed due to worsening scoliosis, but that surgery could only be performed safely when her bone density improved. Filing 11-12 at 4.

On October 4, 2019, Mindy S. visited Dr. Stanciu for her osteoporosis. Filing 11-13 at 3. During the appointment, Dr. Stanciu noted Mindy S.'s lumbar spine was deformed and scoliotic and that her bone density was very low. Filing 11-13 at 3. A trabecular bone score showed very poor bone quality. Filing 11-13 at 3. Mindy S visited Dr. William Fattig, M.D., twice in October and November of 2019 where she complained of sleep problems and fatigue. Filing 11-13 at 46-48, 50-51. During both visits, Dr. Fattig made note of Mindy S.'s migraine headaches and determined that a prescription of Trokendi lessened their severity. Filing 11-13 at 46-48, 50-51.

A test in January 2020 showed a significant increase in bone density in comparison to a previous exam from December 2017. Filing 11-14 at 63. Mindy S. visited with Dr. Kumar on March 5, 2020. Filing 11-14 at 59. Mindy S. rated her pain at a seven out of ten, and said her pain was five out of ten on a good day and ten out of ten on a bad day. Filing 11-14 at 62. Dr. Kumar diagnosed Mindy S with spondylolisthesis at the L3-L4 level, kyphosis due to osteoporosis, facet degeneration of lumbosacral region, facet degeneration of lumbar region, lumbar degenerative disc disease, flat back syndrome, acquired scoliosis, acquired kyphosis, and low back pain. Filing 11-14 at 60. In his assessment, Dr. Kumar noted the plan to go ahead with surgery to address these issues. Filing 11-14 at 60.

On March 8, 2020, Mindy S. was admitted to the hospital due to abdominal pain, nausea, and vomiting. Filing 12-5 at 9. The next morning and while still in the hospital, she suffered from a severe headache. Filing 12-5 at 14. Mindy S. informed the hospital staff that her physician prescribed Topiramate for headaches in January 2020, and she thought it was helping. Filing 12-5

at 14. However, she did not have the prescription refilled in March 2020. Filing 12-5 at 14. The hospital discharged Mindy S. in good condition on March 9, 2020. Filing 12-5 at 9-12.

On May 4, 2020, Mindy S. "underwent a T8-L4 kyphoplasty for multiple compression fractures, L2-L4 right XLIF interbody fusion and L2-4 posterior spine fusion to correct her scoliosis and spondylolisthesis." Filing 12-1 at 51. At a follow-up appointment with Dr. Kumar on May 26, 2020, Mindy S. reported that "[h]er preoperative pain ha[d] completely resolved and she [was] pleased with the results and her pain [was] much improved." Filing 12-1 at 51. Dr. Kumar mentioned Mindy S. was currently taking Percocet and Oxycodone for pain relief but was decreasing the dosage. Filing 12-1 at 51. Mindy S. had non-antalgic gait, she could stand upright, and her spine balance was "excellent." Filing 12-1 at 51. Twisting movements of the torso, cervical spine motions, lumbar spine extension movements were all painless. Filing 12-1 at 51. She had no motor or sensory deficits in her lower limb. Filing 12-1 at 51. In his assessment, Dr. Kumar stated, "Mindy is doing well after her L2-4 reconstructive surgery for her scoliosis [and] multiple compression fractures, and the preoperative pain is resolved. She is pleased with the surgical results." Filing 12-1 at 52.

On July 7, 2020, Mindy S. went to the emergency room with a laceration in her right ankle. Filing 12-6 at 6. She claimed to have received this injury after "taking down a windmill top when the wind caught it and hit her in the ankle." Filing 12-6 at 6. The hospital treated the laceration, gave her a tetanus shot, and discharged her later that day. Filing 12-6 at 8, 10, 15.

During a visit with Dr. Kumar on August 11, 2020, Mindy S. rated her pain at three out of ten on a bad day but added that the pain could go as high as seven out of ten. Filing 12-1 at 65. She stated her "pain has decreased considerably since her surgery" and that her "preoperative pain has resolved." Filing 12-1 at 65. She was also weaning off her narcotic intake and had significantly

decreased her dosage. Filing 12-1 at 65. Dr. Kumar stated Mindy S. can ambulate well, perform her day-to-day activities, and that she did not have any neurological deficits. Filing 12-1 at 65. Dr. Kumar noted that x-rays of her spine showed "that her fusion is progressing nicely anteriorly and posteriorly with no evidence of junctional kyphosis or any associated complication." Filing 12-1 at 65. Mindy S. reported being "able to go up on her tiptoes and on her heels and has minimal difficulty with day-to-day activities." Filing 12-1 at 65. Dr. Kumar stated Mindy S.'s "[s]pine flexion extension movements are painless," and that there appeared to be no neurological deficits in her upper or lower limbs. Filing 12-1 at 65.

On August 26, 2020, Mindy S. visited Dr. Fattig with complaints of bilateral back pain, diarrhea, and depression. Filing 12-2 at 11. She rated her pain at a six out of ten. Filing 12-2 at 11. A physical examination showed normal tone and motor strength, and normal movement of all extremities. Filing 12-2 at 14. Dr. Fattig diagnosed Mindy S. with diarrhea, insomnia, and depressive disorder. Filing 12-2 at 14. During a visit with Dr. Fattig on September 14, 2020, Mindy S. complained of sleep problems. Filing 12-2 at 7. She rated her pain at a five out of ten. Filing 12-2 at 7. A physical examination showed normal tone and motor strength and normal movement of all extremities. Filing 12-2 at 10. In his assessment, Dr. Fattig diagnosed Mindy S. with irritable bowel syndrome, depressive disorder, and migraines. Filing 12-2 at 10.

Mindy S. visited Dr. Fattig on September 21, 2020, complaining of a sore throat, and asked him to fill out disability paperwork. Filing 12-2 at 4. She rated her pain at five out of ten. Filing 12-2 at 4. A physical examination showed normal tone and abnormal motor strength, contracture, malalignment, tenderness, limited range of motion, and bony deformity. Filing 12-2 at 7. In his assessment, Dr. Fattig diagnosed Mindy S. with pharyngitis and major depressive disorder. Filing 12-2 at 7.

### D. The ALJ's Findings

An ALJ engages in a five-step analysis to determine whether a claimant is disabled. *Grindley v. Kijakazi*, 9 F.4th 622, 628 (8th Cir. 2021) (citing *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)).

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004)). The ALJ must continue the analysis until the claimant is found not to be disabled at steps one, two, four or five, or is found to be disabled at steps three or five. *See* 20 C.F.R. § 404.1520(a).

At step one, the ALJ will find the claimant not to be disabled if he or she is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Substantial gainful activity is work activity that is both substantial and gainful. 20 C.F.R. § 404.1572. Substantial work is defined as "work activity that involves doing significant physical or mental activities." 20 C.F.R. § 404.1572(a). Gainful activity is defined as "work activity that you do for pay or profit." 20 C.F.R. § 404.1572(b). Here, the ALJ determined Mindy S. had not engaged in substantial gainful activity since her alleged onset date of August 21, 2019. Filing 11-2 at 13.

At step two, the ALJ will determine if the claimant has a severe impairment or a combination of severe impairments. 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is "severe" if it limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). The ALJ determined Mindy S. had the following severe impairments: degenerative disc disease of the lumbar spine with surgery, chronic compression fractures in the thoracic spine with surgical repair,

osteoporosis, osteoporosis-induced scoliosis with surgical repair, osteoporosis-induced kyphosis with surgical repair, asthma, major depressive disorder, generalized anxiety disorder, and post-traumatic stress disorder. Filing 11-2 at 13.

At step three, the ALJ then must determine whether the impairment(s) meet the criteria set forth in a list of impairments provided by the Social Security Administration. *See* 20 C.F.R. § 404.1520(a)(4)(iii); *see also* 20 C.F.R. § Pt. 404, Subpt. P, App. 1. If the claimant's severe impairments meet or are equal to one or more of the listed impairments, the ALJ must find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(iii). Otherwise, the ALJ will proceed to the next step. *Id.* Here, the ALJ determined that none of Mindy S.'s severe impairments met or were medically equal to the severity of any of the listed impairments. Filing 11-2 at 14.

At step four, the ALJ must determine the claimant's residual functional capacity (RFC) and assess the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). A claimant's RFC is the extent to which a claimant can engage in physical and work activities despite the claimant's medical limitations. 20 C.F.R. § 404.1545(a). "A disability claimant has the burden to establish her RFC." *Eichelberger*, 390 F.3d at 591 (citing *Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir. 2004)). "The ALJ determines a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Id.* Here, the ALJ concluded:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except that she has the ability to stand and/or walk for 6 hours in an 8-hour workday. She cannot climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs, balance, kneel, stoop, crouch, and crawl. She can have no concentrated exposure to fumes, gases, chemicals, vibration, or hazards such as unprotected heights and close proximity to dangerous moving mechanical parts. She can occasionally interact with the general public.

Filing 11-2 at 15. With consideration to the claimant's RFC, the ALJ will then determine if the claimant is still able to do his or her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv); *see also* 20 C.F.R. § 404.1560(b). "Past relevant work" is work performed by the claimant within the last fifteen years or fifteen years prior to the date that disability must be established. *See* 20 C.F.R. § 404.1565(a); *see also* 20 C.F.R. § 416.965(a). If the claimant is able to perform past relevant work, the ALJ will find the claimant to be not disabled. *Id.* In the present action, the ALJ concluded Mindy S. was unable to perform any past relevant work. Filing 11-2 at 19.

At step five, if the ALJ determines the claimant is not able to do past relevant work, the burden of proof shifts to the ALJ to show the claimant "retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Goff*, 421 F.3d at 790 (quoting *Eichelberger*, 390 F.3d at 590). However, the burden of proof remains with the claimant to prove disability and RFC. *Id.* (quoting *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2001)). If it is not shown that a significant number of jobs exist, the ALJ must find the claimant to be disabled. 20 C.F.R. § 404.1520(a)(4)(v). The ALJ may have a VE testify at the administrative hearing. 20 C.F.R. § 404.1566(e). The role of the VE is "to take into account medical limitations, including opinions as to work time limits, and offer an opinion on the ultimate question whether a claimant is capable of gainful employment." *Swedberg v. Saul*, 991 F.3d 902, 905 (8th Cir. 2021) (quoting *Smallwood v. Chater*, 65 F.3d 87, 89 (8th Cir. 1995)). Here, the ALJ asked the VE whether someone with Mindy S.'s age, education, work experience, and RFC could perform sedentary work with added postural, environmental, and mental limitations. Filing 11-2 at 48-49. The VE testified a significant number of jobs exist in the national economy for someone of Mindy S.'s age, education, work experience, and RFC. Filing 11-2 at 48-49. The ALJ then concluded:

The vocational expert testified that given all of these factors the individual would be able to perform the requirements of representative unskilled (SVP 2), sedentary occupations, such as:

> 1) assembler (DOT #713.687-018), of which there are approximately 35,000 jobs in the national economy;
> 2) scanner document preparer (DOT #249.587-018), of which there are approximately 15,000 jobs in the national economy; and
> 3) packer of medical supplies (DOT #559.687-014), of which there are approximately 5,000 jobs in the national economy.

Pursuant to SSR 00-4p, I have determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles.

Based on the testimony of the vocational expert, I conclude that, considering the claimant's age, education, work experience, and residual functional capacity, the claimant is capable of making a successful adjustment to other work that exists in significant numbers in the national economy. A finding of "not disabled" is therefore appropriate under the framework of the above-cited rules.

Filing 11-2 at 21. In sum, the ALJ found Mindy S. not to be disabled at step five after determining she retains the RFC to do other kinds of work, and that the work she can perform exists in significant numbers in the national economy. *See Goff*, 421 F.3d at 790 (quoting *Eichelberger*, 390 F.3d at 590).

## II. DISCUSSION

### A. Standard of Review

Upon review, the Court must determine if a denial of benefits by the Commissioner is supported by substantial evidence on the record as a whole. *Lucus v. Saul*, 960 F.3d 1066, 1068 (8th Cir. 2020). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the conclusion." *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011) (quoting *Finch v. Astrue,* 547 F.3d 933, 935 (8th Cir. 2008)). Courts should "defer heavily to the findings and conclusions of the Social Security Administration," *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010)), and should not reverse the Commissioner's decision simply

because the Court would have decided differently. *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011) (quoting *Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009)). Moreover, even if error did occur, "reversal of an ALJ's decision is not required if an error was harmless, meaning '[t]here is no indication that the ALJ would have decided differently' if the error had not occurred." *Grindley*, 9 F.4th at 629 (alteration in original) (quoting *Van Vickle v. Astrue*, 539 F.3d 825, 830 (8th Cir. 2008)).

## B. Analysis

Mindy S. raises two issues she argues support vacating the ALJ's decision to deny her disability benefits. First, Mindy S. asserts there were conflicts in the VE testimony about the occupations available to Mindy S. and that the ALJ failed to resolve these conflicts. Mindy S. asserts failing to resolve these conflicts was not harmless error. Moreover, Mindy S. asserts the number of available jobs provided by the VE did not constitute a significant number and therefore a significant number of jobs does not exist in the national economy for Mindy S. These errors, according to Mindy S., prove the ALJ failed to carry his burden at step five of the analysis. Second, Mindy S. claims the ALJ did not formulate an RFC that properly considered all of Mindy S.'s impairments and subjective complaints of pain. By failing to do so, Mindy S. argues the RFC assessment was not based upon substantial evidence in the record.

The Court concludes that there were no conflicts in the VE testimony and that the ALJ properly found that a significant number of jobs in the national economy are available to Mindy S. The Court further finds that substantial evidence supports the ALJ's decision. Accordingly, the

Court grants the Commissioner's Motion, denies Mindy S.'s Motion, and affirms the ALJ's decision.

### 1. The ALJ Properly Carried his Burden at Step Five

Mindy S. asserts the ALJ failed to resolve apparent conflicts that existed between the VE testimony and the Dictionary of Occupational Titles (DOT), which is a publication the Social Security Administration uses in making disability determination that provides "information about the requirements of work in the national economy." *Moore v. Colvin*, 769 F.3d 987, 989 n.2 (8th Cir. 2014). According to Mindy S., the ALJ erred by not ensuring that the VE's testimony was consistent with the DOT. Mindy S. further argues that there were apparent conflicts between the VE testimony and the DOT. Mindy S. contends that the ALJ failed to obtain a reasonable explanation for these conflicts, rendering the conflicts unresolved and causing the ALJ to improperly rely on the VE testimony.

The United States Court of Appeals for the Eighth Circuit has "consistently held that if 'substantial evidence supports the ALJ's phrasing of the hypothetical to the vocational expert, and there was no conflict between the vocational expert's testimony and the DOT, the ALJ properly relied on the testimony.'" *Courtney v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 1000, 1004 (8th Cir. 2018) (quoting *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)). During an administrative hearing, ALJs must engage in the analysis required by Social Security Ruling 00-4p (SSR 00-4p):

> "When there is an apparent unresolved conflict between the VE . . . and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE . . . . At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency."

*Welsh v. Colvin*, 765 F.3d 926, 929 (8th Cir. 2014). The Eighth Circuit has construed this analysis "as placing on the ALJ an affirmative responsibility to ask about 'any possible conflict' between

VE evidence and the DOT, and to obtain an explanation for any such conflict, before relying on VE evidence to support a determination the claimant is not disabled." *Welsh*, 765 F.3d at 929 (citing *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014)). However, an ALJ need not inquire further if no apparent conflict exists. *See Courtney*, 894 F.3d at 1003–04.

### a. The ALJ Ensured the VE Testimony was Consistent with the DOT

The Court first addresses Mindy S.'s argument that the ALJ failed to ensure that the VE testimony was consistent with the DOT. At the hearing, the ALJ asked the VE a hypothetical question about the availability of sedentary work in the national economy. Filing 11-2 at 48. After posing the hypothetical, the ALJ did not ask if the VE's testimony was consistent with the DOT. *See* Filing 11-2 at 48. Mindy S. asserts that the ALJ erred by failing to ask the VE if his testimony was consistent with the DOT when asking this specific hypothetical. However, the ALJ did ask the VE if his testimony was consistent with the DOT earlier in the hearing. Filing 11-2 at 48.

SSR 00-4p states, "At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency." 2000 WL 1898704. No authority requires the ALJ to ensure the VE testimony is consistent with the DOT at a particular point in the hearing, nor does it require the ALJ to inquire after every hypothetical. Instead, the ALJ fulfills his duty simply by asking the VE on the record if his testimony is consistent with the DOT before making a disability determination. *See Welsh*, 765 F.3d at 929; *see also* SSR 00-4p, 2000 WL 1898704. Here, the ALJ inquired on the record whether the VE's testimony was consistent with the DOT, to which the VE responded, "yes," and the ALJ accepted the VE's opinion that there was no inconsistency. Filing 11-2 at 48. By doing so, the ALJ fulfilled his duty to ensure the VE's testimony was consistent with the DOT.

Accordingly, the ALJ did not commit error because he did not inquire as to whether there was consistency after the hypothetical regarding the availability of sedentary work.

### b. No Apparent Conflicts Existed that Required Additional Inquiry

Mindy S. further argues that there were several apparent conflicts between the VE's testimony and the DOT that required the ALJ to obtain a reasonable explanation to resolve the conflicts. First, Mindy S. contends that an apparent conflict exists because the VE and the ALJ both referred to the job of ampoule sealer as a "packer of medical supplies" when the VE was testifying about jobs available to Mindy S. Filing 11-2 at 49. Mindy S. asserts, without further explanation, "Commonsense dictates that a 'packer of medical supplies' is not even remotely similar to an 'ampoule sealer.'" Filing 18 at 16. However, the DOT explains that an ampoule sealer "[s]eals ampoules filled with liquid drug products, preparatory to packaging." *559.687-014 Ampoule Sealer*, Dictionary of Occupational Titles, (4th ed. 1991), 1991 WL 683782. Contrary to Mindy S.'s assertion, therefore, an ampoule sealer is a packer of medical supplies.

Moreover, the VE and ALJ both cited the ampoule sealer occupation's DOT number (559.687-014) when referencing the job "packer of medical supplies," and classified a packer of medical supplies as being "sedentary, unskilled with an SVP of 2." Filing 11-2 at 49. This classification is consistent with the classification for ampoule sealer. *See 559.687-014 Ampoule Sealer*, Dictionary of Occupational Titles, (4th ed. 1991), 1991 WL 683782. Accordingly, it is clear that the ALJ and VE were referring to the job of ampoule sealer when they stated that a "packer of medical supplies" was an available job. Referring to the available occupation as a "packer of medical supplies" did not constitute error.

Mindy S. also argues the ampoule sealer job is inconsistent with the environmental limitations in her RFC, which states "[s]he can have no concentrated exposure to fumes, gases,

15

chemicals, vibration, or hazards such as unprotected heights and close proximity to dangerous moving mechanical parts." Filing 11-2 at 15. However, according to the DOT, the ampoule sealer job has no exposure to vibration, moving mechanical parts, high exposed places, radiation, toxic caustic chemicals, or other environmental conditions. *559.687-014 Ampoule Sealer*, Dictionary of Occupational Titles, (4th ed. 1991), 1991 WL 683782. Therefore, the ampoule sealer occupation does not conflict with Mindy S.'s environmental limitations in her RFC.

Mindy S. next asserts the ALJ failed to resolve an apparent conflict between the DOT and VE testimony regarding both the ampoule sealer and document preparer occupations. According to Mindy S., the reasoning levels of ampoule sealer (level two) and document preparer (level three) conflict with Mindy S.'s RFC. Filing 18 at 18-19. An occupation's reasoning level "corresponds to the ability to follow instructions and solve problems that is required for satisfactory job performance." *Hulsey v. Astrue*, 622 F.3d 917, 922 (8th Cir. 2010) (citing Dictionary of Occupational Titles, Appendix C, 1991 WL 688702 (2016)). Here, the ALJ limited Mindy S. to reduced range of sedentary work with occasional interaction with the general public and, importantly, explained that "[n]o limitations on skill level of work are imposed . . . there is evidence of no limitations in understanding, remembering, or applying information and no more than mild limitations in concentrating, persisting, or maintaining pace." Filing 11-2 at 18. Thus, the ALJ did not put any limitations on Mindy S.'s reasoning levels. Therefore, there are no cognitive limitations in Mindy S.'s RFC assessment that conflict with the reasoning levels of the ampoule sealer or document preparer occupations.

Mindy S. attempts to argue that she was, in fact, limited to occupations with a reasoning level of one because she was limited to "unskilled" work. The basis of this claim is rooted in the fact that the VE and ALJ referred to the three identified occupations available to Mindy S. as being

16

"unskilled" work. Unskilled work is "work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). Unskilled work corresponds to a specific vocational preparation (SVP) level of one or two in the DOT. *Hulsey,* 622 F.3d at 922 (citing SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000)). "The SVP level listed for each occupation in the DOT connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work performance." *Id.* "At SVP level one, an occupation requires only a short demonstration, while level two covers occupations that require more than a short demonstration but not more than one month of vocational preparation." *Id.* (citing Dictionary of Occupational Titles, Appendix C, 1991 WL 688702 (2016)). Notably, SVP levels are not the same as reasoning levels. *See Hall v. Saul*, No. 18-CV-2032-LTS-KEM, 2019 WL 5085427, at *14 (N.D. Iowa Oct. 10, 2019) (explaining the different definitions of SVP levels and reasoning levels); *see also Boleman v. Colvin*, No. CV 14-3130, 2015 WL 9450850, at *4 (W.D. Ark. Dec. 23, 2015) ("It is well established that reasoning level[s] of two and three are not inconsistent with unskilled work." (citing *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007))).

Mindy S.'s assertion that the ALJ limited her to occupations with a reasoning level of one is directly refuted by the ALJ's written determination. As previously mentioned, the ALJ placed no cognitive limitations in Mindy S.'s RFC assessment. Instead, the ALJ simply referred to the jobs the VE identified as being "unskilled" because they have an SVP level of two. *See* Filing 11-2 at 21; *see also 249.587-018 Document Preparer, Microfilming,* Dictionary of Occupational Titles, (4th ed. 1991), 1991 WL 672349; *713.687-018 Final Assembler,* Dictionary of Occupational Titles, (4th ed. 1991), 1991 WL 679271; *559.687-014 Ampoule Sealer,* Dictionary of Occupational Titles, (4th ed. 1991), 1991 WL 683782. This reference had nothing to do with

Mindy S.'s RFC assessment, which placed no limitations on Mindy S.'s cognitive abilities. Accordingly, there is no conflict with the reasoning levels of the jobs identified as available to Mindy S. and Mindy S.'s RFC assessment.

In sum, nothing in the record indicates Mindy S.'s RFC conflicts with the reasoning levels of the ampoule sealer or document preparer occupations.

### c. The Commissioner Showed a Significant Number of Jobs Exist for Mindy S.

Mindy S. asserts the ALJ did not properly conclude at step five of the analysis that available work exists in significant numbers in the national economy for her. *See* 20 CFR 404.1566. Work exists in the national economy "when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 404.1566(a). It is inconsequential if work does not exist "in the immediate area in which [the claimant] live[s]" or "[a] specific job vacancy [does not exist] for [the claimant]." *Id.* If a claimant is found to be capable of doing work which exists in the national economy, but the claimant remains unemployed because of inability to find work, absence of work in the claimant's local area, or there are no job openings for the claimant, the claimant will still be found not to be disabled. 20 C.F.R. § 404.1566(c)(1)–(2), (6). However, "Isolated jobs that exist only in very limited numbers in relatively few locations outside of the region where [the claimant] live[s] are not considered 'work which exists in the national economy.'" 20 C.F.R. § 404.1566(b).

In this case, the VE testified that 35,000 final assembler jobs, 15,000 document preparer jobs, and 5,000 ampoule sealer jobs exist in the national economy. Filing 11-2 at 21. The ALJ adopted this testimony, determining Mindy S. can perform these occupations and that the occupations exist in significant numbers in the national economy. Filing 11-2 at 21. Mindy S. asserts the ALJ erred because he did not elicit testimony from the VE regarding the availability of

work in region in which Mindy S. lives, and that the testimony regarding national numbers does not satisfy the Commissioner's burden at step five. However, Courts in this Circuit have held that "evidence of jobs existing nationally does constitute evidence of work existing in several regions of the country, at least where there is nothing in the number of jobs or the nature of the jobs identified to indicate that those jobs would exist only in limited numbers in isolated regions." *Alice T. v. Kijakazi*, No. 8:21CV14, 2021 WL 5302141, at *17 (D. Neb. Nov. 15, 2021) (quoting *Hayden v. Saul*, No. 4:19-CV-187-SPM, 2020 WL 888002, at *11 (E.D. Mo. Feb. 24, 2020)); *see also Evert v. Kijakazi*, No. 3:21-CV-6, 2022 WL 1749611, at *7 (D.N.D. Feb. 17, 2022).

The Eighth Circuit "ultimately leave[s] to the trial judge's common sense the application of the significant numbers requirement to a particular claimant's factual situation." *Hall v. Chater*, 109 F.3d 1255, 1259 (8th Cir. 1997). Here, the VE testified that 35,000 final assembler jobs, 15,000 document preparer jobs, and 5,000 ampoule sealer jobs exist in the "national economy" that an individual with Mindy S.'s RFC could perform. Filing 11-2 at 48-49. Nothing in the record[3] indicates that the three identified jobs would exist only in limited numbers in isolated regions, nor that the ALJ or VE were unaware of what is to be considered a "significant number" of jobs under 20 C.F.R. § 404.1566. While it may be better practice for the ALJ to elicit testimony from the VE regarding the regional availability of work, the evidence obtained by the ALJ in this case was sufficient to satisfy his burden at step five. Therefore, under the particular facts of this case, the Court finds the ALJ properly concluded that 55,000 jobs existing nationally to be a significant

---

[3] Plaintiff directs the Court to results from a job estimation software, submitted into the record after the administrative hearing, which provides job numbers different from those provided by the VE. *See* Filing 11-8 at 6-13. However, "no authority stat[es] that a VE's job-number estimates cannot be considered substantial evidence of jobs existing in significant numbers in the national economy . . . when the VE does not use the estimation software plaintiff's counsel prefers." *Cerveny v. Saul*, No. 8:19CV541, 2020 WL 4260521, at *5 (D. Neb. July 24, 2020).

number. *See Weiler v. Apfel*, 179 F.3d 1107, 1111 (8th Cir. 1999) (32,000 jobs available "nationwide" constitutes a significant number).

Finally, Mindy S. argues technological advances in the modern economy have rendered the "document preparer, microfilming" occupation obsolete and it should therefore not be classified as existing in significant numbers in the national economy. A VE's testimony based on a properly phrased hypothetical question constitutes substantial evidence upon which an ALJ may rely. *See Goff*, 421 F.3d at 794. "The Social Security Administration (SSA) describes VEs as 'reliable sources of occupational information' and 'sources of occupational evidence.'" *Courtney*, 894 F.3d at 1003–04 (citing SSR 00-4p, 2000 WL 1898704, at *1–*2); 20 C.F.R. § 416.966(e)). Moreover, Social Security regulations recognize the DOT as a reliable source of job information. 20 C.F.R. § 404.1566(d)(1). The VE in this case testified in response to a properly phrased hypothetical that 15,000 document preparer jobs exist in the national economy. This testimony constitutes substantial evidence sufficient to support the ALJ's decision. Moreover, there is no authority binding on this Court indicting that the document preparer occupation is obsolete. *See Ford v. Berryhill*, No. 4:17CV00328 JLH, 2018 WL 2024620, at *1 (E.D. Ark. May 1, 2018) (rejecting argument that the document preparer occupation is obsolete). Therefore, the Court finds no error in the ALJ including the document preparer occupation as a job available to Mindy S.

Nevertheless, even if this occupation were to be excluded, the VE identified two other occupations in his testimony that satisfy Mindy S.'s RFC, and "[a]n ALJ may rely on a vocational expert's testimony as long as some of the identified jobs satisfy the claimant's residual functional capacity." *Grable v. Colvin*, 770 F.3d 1196, 1202 (8th Cir. 2014) (citing *Weiler*, 179 F.3d at 1110-11). Excluding the document preparer job still leaves 40,000 jobs available to Mindy S., which the Court concludes constitutes a significant number in the national economy. *See Weiler*, 179 F.3d at

1111 (holding that substantial evidence supported the ALJ's decision where the VE identified one occupation with 32,000 available positions). Therefore, any error in including the document preparer job was harmless because "[t]here is no indication that the ALJ would have decided differently' if the error had not occurred." *Grindley*, 9 F.4th at 629 (quoting *Van Vickle*, 539 F.3d at 830).

### 2. The ALJ Properly Formulated an RFC that Accounted for all of Mindy S.'s Medical Impairments

Mindy S. argues the ALJ erred by failing to formulate an RFC that described the total limiting effects of Mindy S.'s medically determinable impairments. Mindy S. first says the ALJ failed to properly consider Mindy S.'s testimony regarding the need to shift positions frequently throughout the day due to back pain. An ALJ uses a two-step analysis when weighing a claimant's subjective descriptions of pain or other symptoms. *See* 20 C.F.R. § 404.1529. First, the ALJ considers whether there is "a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at § 404.1529(b). Second, if the claimant has medical impairments which could reasonably be expected to produce the pain or other symptoms alleged, the ALJ must evaluate the "intensity, persistence, and limiting effects" of those symptoms to the extent to which they limit the claimant's work-related activities. *Id.* at § 404.1529(c). When the statements are not consistent with objective medical evidence, the ALJ must consider other evidence in the record to determine if the claimant's symptoms limit the ability to do work-related activities. *Id.*

Here, the ALJ found that Mindy S.'s medically determinable impairments could reasonably be expected to cause her alleged symptoms. Filing 11-2 at 16-18. However, the ALJ determined the descriptions of pain and other symptoms concerning the intensity, persistence, and limiting

effects of these symptoms were inconsistent with the objective medical evidence and all other evidence in the record. Filing 11-2 at 16-18. Indeed, the ALJ thoroughly assessed the objective medical evidence and found that Mindy S.'s alleged need to frequently shift positions was not consistent with her medical records or other evidence in the record. Filing 11-2 at 16-19.

As noted by the ALJ in Mindy S.'s RFC assessment, the objective medical evidence in the record showed improvement with Mindy S.'s back after surgery in May 2020. Filing 11-2 at 16-19. Mindy S. alleges she fell down in August 2020 and reaggravated her back, but the medical records from subsequent doctor's visits do not show any report of this fall. Filing 11-2 at 16-19. Moreover, Mindy S. testified she did not report this fall to her doctors. Filing 11-2 at 16-19. Considering these factors, the ALJ concluded "either that the exacerbation of pain caused by the fall was minor or that to the extent the exacerbation was more severe, it was brief in duration. In either case, the medical evidence does not establish that the fall was a significant setback in the claimant's recovery." Filing 11-2 at 17. Although Mindy S. testified she needed to frequently shift positions throughout the day due to pain, the ALJ "may decline to credit a claimant's subjective complaints 'if the evidence as a whole is inconsistent with the claimant's testimony.'" *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019). Therefore, the ALJ properly considered the subjective complaints of pain and did not err when finding the intensity, persistence, and limiting effects of these symptoms not to be consistent with the objective medical evidence.

Mindy S further asserts the ALJ erred by failing to take into account her recurring migraine headaches. However, "The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five." *Goff*, 421 F.3d at 790 (quoting *Stormo*, 377 F.3d at 806). In her initial disability report, Mindy S. did not list migraines as a disabling impairment that inhibits her ability to work. Filing

22

11-10 at 6. Further, neither Mindy S. nor her attorney mentioned migraines during the administrative hearing. *See* Filing 11-2 at 28-51. Because deference is to be afforded to the ALJ's determinations and the burden is on the Plaintiff to prove disability, the Court finds the ALJ did not commit legal error by failing to explicitly address Mindy S.'s alleged migraines in her RFC assessment.

Lastly, Mindy S. claims the ALJ inadequately considered the nature of her pathologic fractures resulting from osteoporosis. To the contrary, the ALJ's written determination demonstrates that the ALJ adequately considered Mindy S.'s physical limitations. Among the listed severe impairments, the ALJ included: degenerative disc disease of the lumbar spine with surgery, chronic compression fractures in the thoracic spine with surgical repair, osteoporosis, osteoporosis induced scoliosis with surgical repair, and osteoporosis-induced kyphosis with surgical repair. Filing 11-2 at 13. In his following assessment, the ALJ thoroughly discussed the history and nature of these impairments. Filing 11-2 at 13-19. Nothing in the record provides a basis for the Court to believe the ALJ did not understand the nature of Mindy S.'s pathological fractures.

The ALJ formulated an RFC that limited Mindy S. to a reduced range of sedentary work. Filing 11-2 at 15. The ALJ accounted for Plaintiff's physical impairments (degenerative disc disease, compression fractures, and osteoporosis) by limiting her to sedentary work with additional postural limitations. Filing 11-2 at 15. After considering her history of asthma, and to limit exposure to activities which may aggravate her back pain, the ALJ included environmental limitations in her RFC. Filing 11-2 at 15. The ALJ accounted for Mindy S.'s mental impairments (severe depressive disorder, anxiety disorder, and post-traumatic stress disorder) by limiting her to only occasional interaction with the general public. Filing 11-2 at 15. In sum, the ALJ properly

considered all necessary evidence, including Mindy S.'s subjective complaints, and did not err in finding some of the alleged symptoms to be inconsistent with the objective medical evidence. *See Schwandt*, 926 F.3d at 1012. Accordingly, the ALJ properly formulated an RFC that accounted for Mindy S.'s medical impairments.

### III. CONCLUSION

The Court finds the Commissioner's final decision denying Mindy S.'s claim for benefits under the Act should be affirmed. Accordingly,

IT IS ORDERED:

1. Mindy S.'s motion for an Order Reversing the Commissioner's Decision, Filing 18, is denied;

2. Kijakazi's Motion for an Order Affirming the Commissioner's Decision, Filing 19, is granted;

3. The Commissioner's decision is affirmed;

4. Mindy S.'s case is dismissed with prejudice; and

5. The Court will enter a separate judgment.

Dated this 22nd day of July, 2022.

BY THE COURT:

Brian C. Buescher
United States District Judge

24